## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NIKOLE R. SCHRIEFER | C.A. No.: |
| Plaintiff, | **TRIAL BY JURY DEMANDED** |
| v. | |
| PREMIER EDUCATION GROUP, a Limited partnership, d/b/a The Harris School of Business | **COMPLAINT** |
| Defendant. | |

1. Plaintiff Nikole Schriefer ("Plaintiff") is a resident of the State of Maryland residing at 6506 Cabin Ridge Road, Hurlock, MD 21643.

2. Defendant Premier Education Group ("Defendant") is a Limited Partnership whose registered agent for service of process is the National Registered Agents, Inc., 1209 Orange Street, Wilmington, DE 19801.

3. Defendant is an employer within the State of Delaware and within the jurisdictional coverage of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII), and the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12101 *et seq.* (the "ADA").

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C. § 200e(5)(f)(3), and 42 U.S.C. § 12117.

5. Venue for all causes of action stated herein lies in the District of Delaware, as acts alleged as the basis for these claims took place within the boundaries of that District.

6. Plaintiff brings this action under the Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e *et seq.*, and the Americans with Disabilities Act of 1990 as amended,

42 U.S.C. § 12101 *et seq.*, to redress the wrongs done to her by Defendant's discrimination against her on the basis of her sex (pregnancy) and disability.

7. Plaintiff timely submitted a complaint of discrimination on the basis of sex (pregnancy) and disability, to the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC").

8. Plaintiff has received a Notice of Right to Sue for the above referenced charges from the EEOC.

9. Plaintiff has timely filed this complaint within ninety (90) days of her receipt of the aforementioned Notice of Right to Sue.

10. At all times relative to this Complaint, Plaintiff had a "disability" as that term is defined by 42 U.S.C. § 12102(1). Specifically, Plaintiff was informed by her doctor that she had a new diagnosis of gestational diabetes and at the time was considered high risk for pregnancy that substantially limited one or more of her major life activities.

11. These limitations included a restriction that limited Plaintiff to lifting no more than 5 pounds, and a restriction that limited Plaintiff to working no more than forty hours per week.

12. Despite Plaintiff's disability, she was, at all times relative to this Complaint, able to perform the essential functions of her job as a Senior Campus Director.

13. Plaintiff is female and was pregnant at the time the discriminatory actins occurred.

14. On or about September 2, 2011, Plaintiff was hired as a Medical Assistant Instructor.

15. Plaintiff began working for Defendant in approximately 2011.

16. On or about January 21, 2019, Plaintiff left her position with Defendant to take a position closer to home.

17. On or about February 16, 2019, Plaintiff was re-hired by Defendant as a Senior Campus Director.

18. Plaintiff's job responsibilities were to foster a positive and professional campus experience for potential admissions, current students, staff and community. Also, hire, train coach and evaluate employees of the campus, in consultation with Human Resources. Development and compliance of budgeted goals, profitability and overall fiscal management of campus.

19. At all times relative to this complaint, Ruthanne Wolverton ("Wolverton"), was Plaintiff's supervisor and was Senior Vice President of Outcomes.

20. At all times relative to this Complaint, Nicholas V. Hastain, Ph.D. ("Hastain"), was President and CEO.

21. At all times relative to this Complaint, Michael Jack Kaczynski ("Kaczynski"), was Vice President & General Counsel.

22. On or about October 7, 2019, Plaintiff injured her back while moving a filing cabinet at work.

23. While Plaintiff was at the emergency room being treated for her back injury, she learned that she was pregnant.

24. Plaintiff informed Management of her back injury, pregnancy, new diagnosis of gestational diabetes and that the pregnancy was high risk.

25. Plaintiff's high-risk pregnancy required her to see an OB specialist in MD to treat her condition in addition to her regular OB appointments.

26. Plaintiff needed to attend physical therapy (3) three times a week due to a back injury that was caused by her moving a filing cabinet at work.

27. In or about October, 2019, Plaintiff asked for an accommodation of coming in at 9:00 a.m. every day to allow her to attend physical therapy.

28. Plaintiff was informed by Wolverton and Kaczynski that they could not accommodate her physical therapy schedule and she would need to be treated by her regular doctor.

29. Plaintiff made every attempt to arrange a work schedule to fit in with her multiple doctor appointments.

30. This would require Plaintiff to come in late or leave early from work on two separate days every two weeks (twice per month) in order for her to attend appointments.

31. Plaintiff filed an EEOC complaint complaining Defendant was unwilling to accommodate Plaintiff's work schedule in any way for her to continue physical therapy and attend her high-risk OB appointments.

32. Plaintiff was willing to work late if needed just as long as it didn't conflict with her doctor's restrictions.

33. On or about October 15, 2019, Plaintiff submitted a doctor's note to Management informing them of her limited restrictions.

34. On or about October 23, 2019, Plaintiff was issued a written warning for poor judgment and poor work performance related to campus retention rates and moving furniture.

35. In or about January 2020, Plaintiff received an email from Hastain written warning from Wolverton for missing time from work although Management had been made aware of Plaintiff's follow up appointment for her back injury.

36. On or about January 13, 2020, Plaintiff sent an e-mail to Hastain as a follow up to their conference call informing him that she needed time off for her high-risk pregnancy and workers' compensation follow up appointments.

37. By emails the same day, Plaintiff described her work schedule and upcoming appointments.

38. Hastain replied via email the same day stating "[a]s I said on the call, I remain hopeful you can work through this but I can't give you the latitude it appears you are looking for. Thanks Nikki – hang in there, figure it out."

39. Plaintiff advised Defendant via email on January 16, 2020, that she would not be able to miss the appointments and hoped they would consider her in the future.

40. At no time did Defendant engage in an interactive process with Plaintiff regarding how to possibly accommodate her pregnancy or disability.

41. Wolverton informed Plaintiff that Management would ask for her resignation if she kept missing time from work.

42. After Plaintiff was informed by Wolverton that Management would ask for her resignation, she asked Management if there was another position on campus or within the company that they felt would be of better service while she was facing medical challenges of gestational diabetes, a high-risk pregnancy and a back injury.

43. On about January 23, 2020, Despite Plaintiff never having submitted her resignation, Plaintiff received notice from Human Resources on behalf of Kaczynski stating Management was accepting her resignation effective immediately.

44. On or about January 24, 2019, Plaintiff informed Kaczynski that she was sad to hear that her resignation was needed due to her medical issues.

45. Defendant is liable for the actions of its agents as set forth in this complaint under the principles of agency, the doctrine of respondeat superior and pursuant to the ratification of the agents' actions by Defendant.

46. Plaintiff subsequently received a Letter Agreement and General Release from Defendant but did not sign the document.

47. Defendant failed to engage in an interactive process with Plaintiff to determine if there were possible accommodations for her disability.

48. Defendant was aware of Plaintiff's pregnancy.

49. Plaintiff was qualified for her position of Senior Campus Director.

50. Plaintiff suffered an adverse employment action in that Plaintiff was terminated from her employment.

51. There is a nexus between Plaintiff's pregnancy and her adverse employment action.

52. At all times relative to this Complaint, Plaintiff had a disability, had a history of a disability, or was perceived by her employer as having a disability as evidenced by her conversations with Defendant regarding her high-risk pregnancy.

53. Plaintiff would have been able to perform the essential functions of her job with or without an accommodation.

54. Plaintiff requested a shift in work hours to accommodate her appointments.

55. Plaintiff was subjected to a negative job action, i.e. forced to resign, as a result of her disability.

56. The wrongful acts committed by the Defendant, as stated hereinabove, were willful, wanton, and committed in bad faith.

57. As a direct result of the actions of the Defendant, Plaintiff has suffered damages, including, but not limited to, lost wages, severe emotional distress, pain and suffering, mental anguish, and humiliation.

## COUNT III – TITLE VII
### 42 U.S.C. § 2000e *et seq.*

58. Plaintiff restates and hereby incorporates by reference paragraphs 1 through 57 hereinabove.

59. The wrongful acts committed by Defendant, as stated hereinabove, were willful, wanton, and committed in bad faith.

60. By committing the aforementioned acts, Defendant has discriminated against Plaintiff on the basis of her sex (pregnancy) in violation of 42 U.S.C. § 2000e *et seq.*

61. As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

a) back pay, including interest;

b) reinstatement, if feasible, or in the alternative, front pay;

c) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

d) punitive damages;

e) pre-judgment and post-judgment interest;

f) attorney's fees; and

g) any other relief that this Court deems just.

## COUNT I – THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12117 *et seq.*

62. Plaintiff restates and hereby incorporates by reference paragraphs 1 through 61 hereinabove.

63. The wrongful acts committed by Defendant, as stated hereinabove, were willful, wanton, and committed in bad faith.

64. By committing the aforementioned acts, Defendant has discriminated against Plaintiff on the basis of her disability in violation of 42 U.S.C. § 12117 *et seq.*

65. As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

a) back pay, including interest;

b) reinstatement, if feasible, or in the alternative, front pay;

c) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

d) punitive damages;

e) pre-judgment and post-judgment interest;

f) attorney's fees; and

g) any other relief that this Court deems just.

[signature page follows]

SCHMITTINGER AND RODRIGUEZ, P.A.

By: /s/ Gary E. Junge
    Gary E. Junge, Esquire
    Bar I.D. # 6169
    414 South State Street
    P.O. Box 497
    Dover, Delaware 19903-0497
    (302) 674-0140
    Attorney for Plaintiff

Dated: March 10, 2022

9